### SAM ALLEN v. STATE.

No. A-8165. Dec. 17, 1931.
(6 Pac. [2d] 14.)

438

R. P. Montgomery, E. V. Rakestraw, and James H. Mathers, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, hereinafter called the defendant, was by information jointly charged with Jeanette Allen, of the murder of W. H. Humble, was tried separately, convicted, and sentenced by the court to serve a term of 20 years in the state penitentiary.   Motion for new trial was filed, considered, overruled, exceptions saved, and defendant appeals.

The testimony on behalf of the state, in substance, shows that the defendant in this case was engaged in operating a filling station, and living with his family in the rear of the building, in the town of Roosevelt, Okla.; that W. H. Humble was deputy sheriff of Kiowa county, and lived in the town of Roosevelt, Okla.; prior to the 10th day of June, 1930, the deceased, W. H. Humble, had searched the defendant's place of business for intoxicating liquors.

The testimony further tends to show that the deceased and defendant were not on friendly terms.   On the afternoon of June 10, 1930, the deceased and his wife had driven down by the place of business of the defendant and on down to the ball park where some parties had engaged in ball practice.   As the deceased and his wife returned from the ball park, the testimony of Mrs. Humble tends to show that the wife of the defendant, Mrs. Allen, was out in front of the filling station; that Mrs. Allen called

to the deceased and had him stop his car and told him that Sam wanted to see him, meaning Sam Allen, the defendant in this case; the deceased got out of his car and went into the place of business of defendant, and within a few seconds the wife of the deceased heard three shots; she got out of the car and started to go into the building, and Mrs. Allen engaged her in a fight; she tried to get away, and Mrs. Allen pursued her; after the shooting was over, the defendant came out and called to his wife to quit fighting Mrs. Humble.

When the defendant came out of his place of business, parties came up and went in and found the deceased had been fatally wounded, and afterwards died from the effects of the wounds inflicted by the defendant.

The defendant called several witnesses, who testified as to the length of time Mrs. Allen had been at home before the trouble, for the purpose of contradicting Mrs. Humble's statement that Mrs. Allen was at home as they passed going to the ball park, and also to show the deceased was a quarrelsome, troublesome, and dangerous man. The testimony of the defendant tends to show that he had been at his place of business during the entire day; that his wife and children had been to his mother's, about a mile away, and had only returned a few minutes before the trouble; that, at the time the deceased drove up to the place of business of the defendant, the defendant was in the rear room lying on a cot with the children playing around and over him; that the wife of the defendant was in the front room with her baby in her arms.

The testimony of the defendant further shows that the deceased came into the room and pushed Mrs. Allen down with her baby in her arm, and when he saw this he asked the deceased what he meant by what he was doing,

and that when he did so the deceased made a movement as if to get his gun, and he shot the deceased in his right arm so he could not get his gun; the deceased then tried to get his gun with his left hand, and he shot him again; that he did not intend to kill the deceased and only shot to save his life; the defendant knew the deceased was an officer and was always armed.

There was considerable testimony introduced upon the question of the length of time the deceased and defendant had lived in Roosevelt, and to the fact that the defendant's place of business had been searched by the officers for intoxicating liquor, which was immaterial for the purpose of presenting the facts in this case, and only tended to make the record more voluminous. It was also denied by the defendant that his wife was out in front of the place of business when the deceased and his wife drove up to the place of business of the defendant.

The defendant has assigned several errors alleged to have been committed in the trial of his case, which he insists are sufficient to warrant a reversal.

It is urged by the defendant that over his objection the state committed prejudicial error in the direct examination and cross-examination of the witnesses, and especially does the defendant complain of the admission, over his objections, of the acts of Mrs. Allen and the statements she is alleged to have made out of the presence and hearing of the defendant. The defendant insists that the court erred in admitting the testimony of the fight between Mrs. Humble, the wife of the deceased, and Mrs. Allen, the wife of the defendant, which was a separate and independent fight, away from the presence, hearing, and sight of both the deceased and defendant. Mrs. Allen was jointly informed against with the defendant, and the

testimony with reference to what took place between Mrs. Humble and Mrs. Allen seems to have been admitted by the court on the theory that it was all one transaction, and that Mrs. Allen was trying to prevent the wife of the deceased from going to his assistance.

We do not think the admission of this testimony sufficient to warrant a reversal of this case. While the state did not introduce any positive testimony tending to show a conspiracy between the defendant's wife and the defendant, there is testimony tending to show that Mrs. Allen stopped the deceased and told him her husband wished to see him, and that the deceased got out of his car and went into the building where he was killed. On this question there is a conflict between the testimony of Mrs. Humble and the defendant's testimony. From the time the deceased drove up to the place of business of the defendant there is a sharp conflict in the testimony as to what took place up to the time of the shooting of the deceased by the defendant. The defendant, being the only eyewitness to the shooting, insists that he only shot for the purpose of protecting his life or receiving great bodily harm. The conflict in the testimony was settled by the jury; the jury being the exclusive judges of the weight of the evidence and the credit it would give to the statement of the witnesses.

It is further urged by the defendant that the defendant was tried in an unfriendly atmosphere, that the deceased was an officer of the court, and that all the officers of the court were prejudiced against him. If this were true, the defendant should have exercised his statutory rights and filed a motion for a change of venue. There is nothing in the record to show that the trial court, or any of the officers of the court, in any way whatever tried to influence the verdict of the jury.

The instructions of the court have been carefully examined, and we hold that, taken in their entirety, they correctly state the law applicable to the facts in the case. We hold further that the defendant was accorded a fair and impartial trial; that the evidence is sufficient to sustain the verdict; that there are no errors in the record possessing sufficient merit to warrant a reversal.

The judgment is affirmed.

EDWARDS and CHAPPELL, JJ., concur.